**In re G. David MORANT**

No. 01–1132.

United States Court of Appeals,
Federal Circuit.

Dec. 28, 2001.

Before MICHEL, CLEVENGER, and
GAJARSA, Circuit Judges.

CLEVENGER, Circuit Judge.

G. David Morant appeals the decision of the Board of Patent Appeals and Interferences ("the Board") affirming the final rejection of the pending claims in his Application No. 08/369,269. *Ex parte G. David Morant*, No.1997–3858, slip op. at 3 (June 27, 2000), request for rehearing denied (September 18, 2000). Because we detect no error in the Board's finding of a prima facie case of obviousness or in its treatment of Morant's expert affidavit, we *affirm*.

I

The invention at issue in this case involves data bus coupler technology. Data bus cables facilitate communication between various physically-separated electronic devices or terminals. The bus cable consists of two insulated wires twisted together into a loose spiral. Voltage mode data bus systems transmit information as a voltage differential between the two wires of the cable. In contrast, current mode data bus systems transmit information as a differential electric current between the wires. The data bus coupler must transmit information from the cable to the terminals and vice versa. In voltage mode systems, the wires in the coupler typically connect directly, via splicing, to the wires in the bus cable, and the cable therefore directly transmits the voltages to the coupler.

In a current mode system, by contrast, the coupler must be capable of picking up the current from the bus cable by induction—in other words the cable must induce a current in the coupler. Furthermore, the coupler must be able to induce a current in the cable in order to transmit information from a terminal to the cable. This is accomplished without directly splicing the cable to the coupler. Instead, the coupler and cable are electromagnetically coupled so that they can induce currents in one another when necessary. The electromagnetic coupling works by using a coil wrapped around a ferromagnetic material that can pick up the magnetic flux generated by the oscillating electric current in the cable. The magnetic flux in turn creates a current in the coil wrapped around it, which is spliced to whatever device connects to the coupler. The ferromagnetic material thereby couples the currents in the cable with those of the wires in the coupler thus allowing information to flow between the cable and the terminal.

A picture of a prior art current mode coupler and bus cable is shown below in a figure from U.S. Patent No. 4,264,827 issued to Hans Herzog (the Herzog patent).

Herzog Patent, Figure 2a. In the figure, bus cable 10 consists of two insulated wires twisted together. The bus coupler 40 contains a ferromagnetic core 42 coupled to the bus cable by legs 42a and 42b, which pass through the loop of the two wires in the cable. The coupler also contains a twisted wire 45, called a coiled winding, which contains leads 46 and 47 that connect to the terminal. Winding 45 inductively couples the terminal to the bus cable, thus allowing the terminal to communicate with other pieces of equipment attached to the bus cable. The Herzog patent refers to the coupler as "a transformer-type bus coupler," because the dual winding/ferromagnetic core is a classic transformer configuration.

Mr. Morant's invention improves upon the Herzog coupler by drawing on a different type of winding that is well-known in the transformer art. Instead of the coiled winding depicted in the figure above, Mr. Morant used a "planar coil," which is a flat spiral winding of conductive material deposited on a wafer. The planar coil system of Morant's application, also called a "spiral winding," is shown below.

In the planar coil system, a leg of ferromagnetic core 12 passes through the center of the spiral winding deposited on the wafer. The bus cable 24 also coils around the ferromagnetic core, and overall the apparatus functions in substantially the same way as the Herzog coupler described above. The sole difference between the two systems is Morant's use of spiral windings instead of the coiled windings of Herzog. The spiral winding possesses two main advantages over the Herzog system. First, spiral windings take up less space and weigh less than coiled windings, which results in a smaller and lighter coupler. In addition, the spiral windings are more economical to mass produce than coiled windings.

Morant filed Application No. 08/369,269 on his spiral coil current mode cable bus coupler. Independent claim 36, which is representative of the claims at issue on this appeal, recites:

A current mode data transmission system for communicating data among a plurality of electronic data terminal units by creating and sensing time varying electrical currents carried by a data bus comprising:

(a) a data bus including two wires of substantially the same length, insulated from each other, and electrically connected at both ends, said two wires being twisted along their lengths to form a plurality of loops; and

(b) a plurality of bus couplers for electromagnetically coupling electronic data terminal units to said data bus, each of said bus couplers comprising;

(i) a dielectric substrate having an aperture;

(ii) *an electronically conductive planar coil* formed on said dielectric substrate so as to surround said aperture and *spiral outwardly therefrom;* and

(iii) a ferromagnetic core formed of two separate elements that when joined together form at least one closed magnetic path, one of said separable elements including a leg mounted in said aperture in said dielectric substrate, said separable elements separable to allow a loop of said data bus to be positioned about said leg and, thus, about said closed magnetic path when said separable elements are joined together.

(Emphases added.)

The examiner rejected the claims as obvious under 35 U.S.C. § 103 over the Herzog patent combined with any of three references that teach planar coils in the transformer art. The three secondary references are U.S. Patent No. 3,483,499 to Lugden (the Lugden patent), U.S. Patent No. 4,201,965 to Onyshkevych (the Onyshkevych patent), and a German patent issued to Peter Schubotz (the Schubotz patent). Although the examiner rejected the claims for obviousness in three separate office actions on August 17, 1995, April 4, 1996, and November 18, 1996, the record on appeal contains only the text of the November 18 office action.

In response to the April 4, 1996, office action, Morant submitted a declaration by Hans Herzog, an engineer and a former colleague of Morant's at The Boeing Company where both men worked on designing bus couplers for commercial airplanes. The declaration does not specifically discuss the references cited by the examiner, but states that transformers are only superficially similar to the coils in current bus couplers, and that Herzog and his team of engineers did not consider using a spiral coil in the coupler they were developing for use in commercial airplanes. He also noted that when Morant joined the team and suggested using a spiral coil, Herzog and his co-developers "were skeptical" of the proposal, because they thought spiral windings would increase leakage of magnetic fields beyond the tolerance level for the coupler they sought. Finally, Herzog opined that "it was not obvious to substitute a spirally wound coil for a cylindrically wound coil in a current mode bus coupler at the time this change was suggested by Dave Morant."

The examiner did not find the Herzog declaration persuasive with respect to the lack of similarity between transformers and the coils in bus couplers, and once again rejected the claim for obviousness. Morant appealed the rejection to the Board, which found Herzog's declaration to be of little persuasive weight and af-

firmed the obviousness rejection. The Board subsequently rejected Morant's request for rehearing, and Morant now appeals. We exercise jurisdiction over this appeal from a decision of the Board pursuant to 28 U.S.C. § 1295(a)(4)(A).

## II

A claimed invention is unpatentable as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (1994). Obviousness is a legal conclusion based on underlying findings of fact. *In re Dembiczak*, 175 F.3d 994, 998, 50 USPQ2d 1614, 1616 (Fed.Cir. 1999). The underlying factual inquiries include: "(1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *Id.* We review the Board's ultimate determination of obviousness *de novo*, and review its findings of fact, such as whether a motivation to combine references existed, for substantial evidence. *In re Gartside*, 203 F.3d 1305, 1316, 53 USPQ2d 1769, 1776 (Fed.Cir.2000).

Morant raises two grounds for reversal. First, he argues that the examiner and the Board did not make out a prima facie case of obviousness, because they failed to show a motivation to combine references from the bus coupler and transformer arts. In the alternative, he argues that the Herzog declaration, when accorded its proper weight, overcomes the Board's prima facie case of obviousness. We turn first to Morant's initial argument, that the Board did not make out a prima facie case of obviousness.

It is undisputed that the only component in Morant's invention not found in the prior art coupler disclosed in the Herzog patent is the spiral winding and that such spiral windings are well known in the transformer art. The only question remaining, therefore, and the dispositive question for purposes of this appeal, is whether an artisan in the bus coupler field would have been motivated to combine the spiral windings of the transformer art with the prior art coupler in the Herzog patent. If so, then the examiner and the Board correctly set forth a prima facie case of obviousness.

"Measuring a claimed invention against the standard established by section 103 requires the oft-difficult but critical step of casting the mind back to the time of invention, to consider the thinking of one of ordinary skill in the art, guided only by the prior art references and the then-accepted wisdom in the field." *Dembiczak*, 175 F.3d at 999, 50 USPQ2d at 1617. Moreover, "[o]ur case law makes clear that the best defense against the subtle but powerful attraction of a hind-sight based obviousness analysis is rigorous application of the requirement for a showing of the teaching or motivation to combine prior art references." *Id.* Whether a motivation to combine exists is a pure finding of fact that we review for substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . ." *Gartside*, 203 F.3d at 1312, 53 USPQ2d at 1772 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229–30, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The Director contends that the Board's finding of a motivation to combine is supported by such evidence, and we agree.

The Board set forth the factual predicate for its finding of a motivation to combine in its June 27, 2000, decision, *see Ex Parte Morant*, slip op at 6–10. The Board

based its finding principally on suggestions contained within the primary and secondary references themselves. First, the Herzog patent's description of the invention as a transformer-type coupler was crucial to both the examiner's and the Board's findings. In the November office action, the examiner stated that Herzog's device "is referred to in the abstract as well as in col. 2, lines 33–35 as 'a transformer-type bus coupler.' In other words the device of Herzog is basically a transformer." Similarly, the Board noted that "[t]he primary reference to Herzog utilizes a one-turn transformer-type device of conventional transformer-type construction as the active inductive element for Herzog's current mode coupling device." *Id.* at 6. Thus, the Board looked to the transformer art for a motivation to combine.

The Board relied heavily on statements in the Lugten patent that provide a motivation to combine its teachings with the transformer-type coupler described in the Herzog patent. The Lugten patent discloses inductive and transformer devices that use the spiral winding technique adopted in Morant's invention. As noted by the Board, "[t]he initial portion of column 1 after the abstract of Lugten indicates its applicability in high frequency electric pulse environments with the further specific conclusory or summary comment ... that it may be utilized in a pulse transformer or inductor-type device." *Id.* at 7. This would suggest Lugten's applicability in the bus coupler field, because bus couplers operate using relatively high frequency electric pulses. Furthermore, the Lugten patent stated that one of its goals was miniaturization, which was also a goal of Morant's invention. We think that the statements in Lugten relied on by the Board, stating that spiral windings improve performance in transformer and inductor-type devices while allowing miniaturization, provide substantial evidence of

a motivation to combine. Or, in the words of the Board, "taken in light of the collective teachings of Herzog, the applicability of Lugten's device would have been readily apparent to the artisan as a substitute for the more traditional three dimensional wound coils of Herzog for the reasons stated in Lugten itself." *Id.*

Having found substantial evidence to support the Board's finding of a motivation to combine, we conclude that the Board properly set forth a prima facie case of obviousness based on the Herzog patent combined with Lugten. We turn, therefore, to Morant's second argument: that the declaration by Herzog submitted by Morant overcomes the obviousness rejection. As we noted above, the sole issue with respect to obviousness lies in the combinability of the Herzog patent with the transformer references. Thus, it is the combinability portion of the obviousness analysis that must be rebutted by the Herzog declaration if Morant is to prevail.

On appeal, Morant primarily contends that the Board erred in refusing to accord proper weight to the Herzog declaration. *See, e.g., In re Alton,* 76 F.3d 1168, 1175, 37 USPQ2d 1578, 1583 (Fed.Cir.1996). Indeed, Morant argues that the Board improperly rejected the declaration out-of-hand, refusing to engage it on the merits. According to Morant, had it considered the declaration, the Board would have concluded that substitution of spiral for coiled windings was not obvious to one of skill in the art.

While we agree that the Board's discussion of the declaration's merits was somewhat terse, careful review reveals that the Board did consider the declaration. However, the Board found the declaration unpersuasive because Herzog failed to discuss either the language of the pending claims or the specific references over which the claims were rejected. We cannot say that the Board erred in finding the

declaration less persuasive for these reasons.

Morant now argues that the declaration shows that Herzog and his colleagues in the aviation industry would not have thought to use spiral coils because, due to their potential for magnetic flux leakage, spiral coils would not provide the high degree of accuracy needed for bus couplers linking electronic instruments in a commercial airplane. But even if this were so, the pending claims are not limited to high-accuracy applications in the aviation industry. Rather, they read on current-mode bus couplers used in any setting, including those in which the need for accuracy is not so pressing as in the bowels of an airplane. And when deciding whether to combine the Herzog patent with a spiral coil, a bus coupler artisan engaged in a more mundane endeavor would not be deterred by the possibility of leakage that so concerned the builders of airplanes. Such an artisan would look to the very references referred to by the Board, and would conclude that they taught the desirability of substituting a spiral coil for the Herzog winding.

To the extent Morant urges reversal based on the Board's statement that it must reject the declaration to the extent that it opines on the ultimate conclusion of obviousness, we think Morant overstates the matter. While the Board found Herzog's statement that the invention would not have been obvious to him unpersuasive, they did so because he did not provide adequate support for his determination of obviousness. In the words of our predecessor court, "[w]hile we do feel that some weight ought to be given to a *persuasively supported statement* of one skilled in the art on what was not obvious to him, here we think, despite appellant's contrary assertions, that the legitimate inferences from the art of record are too strong to be affected by the weight to which the affidavit is entitled." *In re Lindell,* 55 C.C.P.A. 707, 385 F.2d 453, 456, 155 USPQ 521, 524 (CCPA 1967) (internal citation omitted) (emphasis added). In this case, Herzog failed to discuss either the scope of the pending claims or the references upon which the examiner based his rejection. Thus, Herzog simply did not provide sufficient support for his conclusion to outweigh the direct statements in the references relied upon by the Board and discussed above. Accordingly, we conclude that the Board did not err in affording little persuasive value to the Herzog declaration and that, considered in light of its factual support, the declaration does not overcome the Board's prima facie case of obviousness.

IV

For the reasons given above, we affirm the decision of the Board.

COSTS

No costs