58 CCPA

**Application of Carl A. LUKACH, Setha G. Olson and Harold M. Spurlin.**

**Patent Appeal No. 8517.**

United States Court of Customs and Patent Appeals.

May 27, 1971.

Marion C. Staves, Wilmington, Del., attorney of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and SKELTON, Judge, United States Court of Claims, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of all claims in appellants' application serial No. 442,186, filed March 23, 1965, for Copolymers. We affirm.

The application is stated to be a continuation of copending application serial No. 186,326, filed April 10, 1962, which we shall call the parent application. The parent application is stated to be a continuation-in-part of then copending application serial No. 82,417, filed January 13, 1961, now U.S. Patent 3,153,023. We shall call this application the grandparent.[1] The instant application and the parent appear to contain identical disclosures. However, in order to avoid a

---

1. The grandparent was a continuation-in-part of application serial No. 796,261, filed March 2, 1959, now abandoned. This fact, however, is not critical to the issues before us.

time bar under § 102(b) arising from appellants' British patent 857,183, issued to Hercules Powder Co., the complete specification of which was published December 29, 1960, appellants need the benefit of the filing date of the grandparent application.

One requirement for obtaining that benefit is that the invention now claimed has to have been disclosed in both the parent and grandparent applications "in the manner provided by the first paragraph of section 112." 35 U.S.C. § 120. Whether it was so disclosed is the issue before us, all other requirements of § 120 being clearly met.

Each of the claims is drawn to copolymers of ethylene and propylene, the copolymers being defined by certain recited physical characteristics. Claim 1 is illustrative:

1. A solid elastomeric copolymer of ethylene and propylene having from about 25 mole % to about 60 mole % of repeating units derived from propylene, a reduced specific viscosity of at least about 1.3, a Mw/Mn ratio of at least 2.0 and less than about 3.0, a solubility in n-heptane at –15°C. of at least about 93% by weight and a solubility in a mixture of equal volumes of n-heptane and acetone at 20°C. of less than about 6% by weight, wherein at least 90% of the total copolymer has a propylene content within 5 percentage units of the average composition.

The significance of these limitations is said to be as follows: The copolymers within the claim

1. Are solid. This is indicated by the recitations of "reduced specific viscosity of at least about 1.3" and "solubility in a mixture of equal volumes of n-heptane and acetone at 20°C. of less than about 6% by weight."

2. Are elastomeric. This is indicated by the recitations "having from about 25 mole % to about 60 mole % of repeating units derived from propylene" and "a solubility in n-heptane at –15°C. of at least about 93% by weight."

3. Are essentially homogeneous as to composition. This is indicated by the recitation "at least 90% of the total copolymer has a propylene content within 5 percentage units of the average composition."

4. Have a narrow molecular weight distribution. This is indicated by the recitations "a Mw/Mn ratio of at least 2.0 and less than 3.0."

We focus on the last-mentioned recitation. Mw stands for weight-average molecular weight, and Mn stands for number-average molecular weight. The computation of the value of each of these terms is apparently a complicated matter. See Billmeyer, Textbook of Polymer Science, pp. 56–57, 66–67 (1962). Appellants contend that the ratio Mw/Mn is a recognized indication of molecular weight distribution. This may be so. The examiner, however, was of the view that the "ratio of at least 2.0 and less than 3.0 is not supported in any of the parents." The board agreed, stating: "[T]he Examiner's position is that the range recited in the claims is not disclosed in the earlier applications, and we do not find any disclosure of such a range." For this reason, among others, the board held that appellants were not entitled to the benefit of the grandparent application and hence affirmed the § 102 (b) rejection.

As pointed out above, the question is whether the parent and grandparent applications disclose, "in the manner provided by the first paragraph of section 112," the invention now claimed. From the board's language it is apparently the description requirement, rather than the enablement provisions or best mode provision, of the first paragraph of § 112, which was considered not to have been met.

It is undisputed by appellants that where an applicant claims, as here, a class of compositions, he must describe *that class* in order to meet the description requirement of the statute. See In

re Ahlbrecht, 435 F.2d 908, 58 C.C.P.A. 848 (1971); In re DiLeone and Lucas, 436 F.2d 1404, 58 C.C.P.A. 925 (1971); In re DiLeone, 436 F.2d 1033, 58 C.C.P.A. 934 (1971). The question then is whether appellants have done so in the parent and grandparent applications. We agree with the examiner and the board that they have not.

▮ Looking to the grandparent application, we find no express mention of the Mw/Mn ratio of the copolymers described therein. Appellants correctly argue, however, that the invention claimed does not have to be described *in ipsis verbis* in order to satisfy the description requirement of § 112. See, e. g., Henry J. Kaiser Co. v. McLouth Steel Corp., 257 F.Supp. 372, 429 (E.D.Mich.1966), affd., Kaiser Industries Corp. v. McLouth Steel Corp., 6th Cir., 400 F.2d 36 (6th Cir. 1968), cert. denied, 393 U.S. 119, 89 S.Ct. 992, 22 L.Ed.2d 124 (1969).

The matter of what language constitutes sufficient description to support a claim of given breadth has been a troublesome question. See, e. g., the *DiLeone* cases and In re Ahlbrecht, supra. An especially difficult aspect of this problem has been the situations involving specifications which describe *broader* subject matter than is subsequently claimed, e. g., a genus when a subgenus is claimed. Appellants urge that in the instant case their grandparent application disclosed a genus of copolymers having, among other characteristics, "narrow molecular weight distribution," and that they are now further limiting the claims to the subgenus wherein the distribution is indicated by a Mw/Mn ratio between 2.0 and 3.0. They point out that the examiner has agreed that one of the working examples in the grandparent inherently describes a copolymer which would have a Mw/Mn ratio of 2.6. They then urge that this court's decision in In re Risse, 378 F.2d 948, 54 CCPA 1495 (1967), stands for the proposition that an applicant is entitled, as to a claimed subgenus, to the benefit of the filing date of a parent application if the parent discloses a genus wholly encompassing the claimed subgenus and also discloses a species within that subgenus.

We note, first of all, that the grandparent application here does not disclose any defined genus of which the presently claimed copolymers are a subgenus. The grandparent application states merely that the molecular weight distribution of copolymers therein described is "narrow." As far as we know from the record, this term has no reasonably precise meaning in the art, and hence we are unable to tell what relationship, if any, exists between the grandparent disclosure and the presently claimed class of copolymers. Therefore, even if the rule appellants extract from *Risse* represents the law, it is inapplicable here.

▮ We are thus left with the single example inherently disclosing a copolymer having a Mw/Mn ration of 2.6. This single example does not alone provide support for the recited range from 2.0 to 3.0, and nothing has been brought to our attention to show that any other language in the grandparent application, taken together with the knowledge of persons skilled in the art, points to the recited range. Accordingly, the grandparent application does not, either expressly or inherently, disclose the invention now claimed, and appellant is not entitled to the benefit of the grandparent filing date. It follows that appellants cannot overcome the § 102(b) time bar arising from publication of the complete specification of their British patent.

▮▮ Appellants have raised a further point. They contend that "[t]here is an inconsistency constituting an inequity in rejecting the claims as fully met by the Hercules British patent under 35 USC 102, while at the same time holding that appellants cannot obtain the benefit of the filing date of the U. S. counterpart." What they are saying, in terms of the statute, is that if "the invention was * * * described" in the British reference within the meaning of § 102(b), there must have been a "description of the invention" in the cor-

responding grandparent application within the meaning of the first paragraph of § 112. This argument appears to overlook the law that the description of a single embodiment of broadly claimed subject matter constitutes a description of the invention for anticipation purposes (see, e. g., In re Ruscetta, 255 F.2d 687, 45 CCPA 968 (1958)), whereas the same information in a specification might not alone be enough to provide a description of that invention for purposes of adequate disclosure. See, e. g., In re Ahlbrecht, supra. There are other apparent anomalies between the requirements for claim-anticipating disclosures and for claim-supporting disclosures. See, e. g., In re Hafner, 410 F.2d 1403, 56 CCPA 1424 (1969). If the law in these situations really produces inequities, the proper remedy is in Congress.

The decision of the board is *affirmed*.

Affirmed.