980 F.2d 744
 25 U.S.P.Q.2d 1478
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Herman MIHALICH.
 No. 92-1125.
 United States Court of Appeals, Federal Circuit.
 Oct. 20, 1992.
 
 Before NIES, Chief Judge, BENNETT, Senior Circuit Judge, and RADER, Circuit Judge.
 RADER, Circuit Judge.
 
 DECISION
 
 1
 In an August 21, 1991, decision and an October 30, 1991, reconsideration decision, the Board of Patent Appeals and Interferences rejected claims 1-6, 8, 9 and 10 of Patent Application Serial No. 07/303,937. Mr. Herman Mihalich, the applicant, appealed all the rejections except claims 5 and 6. Because the record does not support the Board's finding of anticipation, this court reverses the Board's rejection of claims 1 and 8.
 
 OPINION
 
 2
 Mr. Mihalich's patent application claims several variations of a "portable beverage dispenser capable of use as an integrated unit both in the home and for outdoor events without electrical power facilities." Patent Application Serial No. 07/303,937. Briefly, the application describes a thermally insulated cabinet with two compartments. The lower compartment holds a beverage container, generally a beer keg. The upper compartment is an ice chest with a cooling coil leading from the beverage container. In operation, gas pressure forces beverage from the container in the lower compartment through the cooling coil in the upper ice chest. Thus, the invention dispenses chilled beverage without an electrical refrigeration unit.
 
 
 3
 Central to the patentability of Mr. Mihalich's invention is the partition between the dispenser's two compartments. Mr. Mihalich designed the partition to permit the ice in the upper chamber to cool the beverage container in the lower chamber, thus allegedly solving a problem with prior beverage dispensers. Before Mr. Mihalich's invention the act of drawing warm beer through a cooling coil caused formation of an excessively foamy beer. The sudden drop in temperature made what Mr. Mihalich's application calls "picnic beer."
 
 
 4
 Mr. Mihalich's invention purports to solve the foamy beer problem with a partition between the upper and lower chambers of his dispenser composed of "thermally conducting material." Id. This partition facilitates a "thermal interchange" between the cooling (upper) and storage (lower) chambers. Id. The thermal interchange cools the beverage in the lower compartment. This temperature drop prevents the sudden cooling reaction that occurs when warm beverage is drawn into the cooling coil. In sum, Mr. Mihalich claims a beverage dispenser which solves the "picnic beer" problem without electricity.
 
 
 5
 The Board sustained the rejection of claims 1 and 8 under 35 U.S.C. § 102(b) (1988). The Board sustained the rejection of claims 2, 3, 4, 9, and 10 under 35 U.S.C. § 103 (1988). The Board sustained the rejections of claims 5 and 6 under the second paragraph of 35 U.S.C. § 112 (1988). Mr. Mihalich did not appeal the rejection of claims 5 and 6.
 
 
 6
 This court reviews anticipation, a question of fact, under the clearly erroneous standard of review. In re King, 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir.1986). To anticipate a claim, a prior art reference must, either expressly or inherently, disclose each and every limitation in the claim. Verdegaal Bros. v. Union Oil Co., 814 F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed.Cir.), cert. denied, 484 U.S. 827 (1987).
 
 
 7
 The examiner asserted, and the Board concurred, that United States Pat. No. 4,225,059 ('059 or Kappos) anticipated Mr. Mihalich's application. Kappos also discloses a beverage cooler and dispenser. Both Kappos's and Mihalich's inventions feature a dual chamber beverage dispenser. Kappos, however, describes the upper chamber of the beverage dispenser as "insulated." Kappos actually claims "an insulated ice chamber in the upper interior portion of said container defining a compartment in the lower portion thereof." Kappos, col. 2, lines 58-60. Further the '059 patent describes: "An insulated ice tray or chamber 20 is provided in the top interior of container 10 and communicates with the lower main compartment 22." Id. at col. 1, lines 60-62.
 
 
 8
 Thus, Kappos does not expressly disclose the "thermally conducting" partition element in claims 1 and 8 of Mr. Mihalich's application. While the upper and lower compartments of Kappos "communicate" via the connecting cooling coil and dispensing means, Kappos makes no reference to thermal interchange between the compartments. The Board clearly erred in finding that the structure described in Kappos inherently discloses a "thermally conducting" partition.
 
 
 9
 Despite Kappos's unambiguous reference to an "insulated" ice compartment, the examiner determined that the '059 patent describes insulation only in the upper and side walls of the ice chamber. The examiner found that the bottom of the Kappos's ice tray, unlike the side walls, is not insulated. The drawings accompanying the '059 patent, however, use identical markings for the side walls and the compartment bottom. Fig. 3, '059.
 
 
 10
 Relying in part on the Manual of Patent Examining Procedure (MPEP) section 608.02 (8th Rev. May 1988), the Board found that only the upper wall of the Kappos ice tray was insulated. The Board interpreted Kappos's drawings to show diagonal cross-hatching, the symbol for metal, for the side and bottom walls.
 
 
 11
 The Kappos drawings are, at best, inconclusive. First, the markings in Fig. 3 of Kappos are horizontal cross-hatchings, not diagonal, as shown in MPEP section 608.02. Second, in Fig. 4 of the Kappos patent, the side walls of the ice tray do not show cross-hatching, but bear no markings whatsoever. Third, the Kappos specification refers to "[a]n insulated ice tray or chamber 20." Kappos, col. 1, line 60. Yet the number 20 in Fig. 3 points to a horizontally cross-hatched side wall of the ice tray. The inconsistencies in the Kappos drawings betray the Board's finding that the '059 patent inherently disclosed the "thermally conducting material" in Mr. Mihalich's partition between the dual chambers. Rather, Kappos unambiguously refers to an "insulated" ice tray. Because Mr. Mihalich claims a partition of "thermally conducting material," Kappos cannot anticipate claims 1 and 8.
 
 
 12
 In claim 1, Mr. Mihalich further specified that the thermal interchange between the upper and lower compartments would be "effective" to cool the beverage and prevent the "picnic beer" foaming reaction. The Kappos patent did not address, let alone purport to solve, the "picnic beer" problem. Because metals have widely varying thermal conductivities, the mere assertion that Kappos' ice tray bottom is metal does not necessitate a conclusion that Kappos inherently discloses sufficient thermal interchange to prevent picnic beer. For this reason as well, the Board clearly erred in finding anticipation of claims 1 and 8.
 
 
 13
 The Board rejected claims 2, 3, 4, 9, and 10 for obviousness under 5 U.S.C. § 103. Other than noting differences between Kappos and his claims, Mr. Mihalich did not distinguish the subject matter of these claims from the prior art cited by the Board. This court discerns no reversible error in the Board's rejection of these claims. This court thus reverses only the Board's rejection of claims 1 and 8 of Mr. Mihalich's application.
 
 
 14
 NIES, Chief Judge, dissenting-in-part.
 
 
 15
 I respectfully dissent from the portion of the majority opinion reversing the board's rejection of Mr. Mihalich's application under 35 U.S.C. § 102(b) (1988) as anticipated by United States Patent No. 4,225,059 to Kappos (Kappos).
 
 
 16
 The dispositive issue with respect to the Kappos patent is whether the ice chamber (20) is insulated on six sides, or, more particularly, whether the bottom cross-hatched floor of the ice chamber is composed of a thermally insulating material or a thermally conductive material. The language used in the Kappos patent is somewhat ambiguous with respect to this issue. Kappos describes an "insulated ice tray or chamber" and claims an "insulated ice chamber." Conversely, Kappos describes the overall container as being "ice cooled" or "refrigerated." These phrases seem at odds with each other in that for the overall container to be "iced cooled" or "refrigerated," it cannot be completely thermally insulated from the only cooling element present in the dispenser, ice. However, we are not left without assistance in interpreting this unclear language--we have the drawings.
 
 
 17
 I do not agree with the majority that the Kappos drawings are inconclusive. A substantial length of coiled hose (68) is located within the ice chamber for cooling the beverage. As shown in figure 3, this hose does not directly contact the ice. Rather, the hose lies within a coil subchamber formed by the ice chamber floor, the coil subchamber ceiling, and four sidewalls. The cross-hatching[1] indicates that all six sides of the coil subchamber, one of which is the floor of the ice chamber, are composed of the same material. If this material is thermally insulating, the ice cannot cool the liquid in the dispensing hose, one of the primary objectives of the invention. In order for the container to function, the cross-hatched portions of the chamber must be composed of a thermally conductive material, thus anticipating the claims of the application at issue.
 
 
 18
 Finally, I would interpret figure 3 in Kappos to disclose a layer of insulation between the ice chamber's inner and outer walls, thus, creating a perimeter of insulation around the ice chamber. Such a construction would make the ice chamber at least partially "insulated." The claim does not mandate complete insulation of the ice chamber. With partial additional insulation, the claim is satisfied and the device is operative.
 
 
 
 [1]
 The majority asserts that the cross-hatching in figure 3 is horizontal and, therefore, does not indicate that the relevant components are composed of metal. Due to the limited size of the marks, it is difficult to tell whether the lines are, or were intended to be, horizontal or diagonal. In any event, the MPEP does not require that metal be designated by diagonal cross-hatching. Furthermore, to be operative, the ice chamber cannot be completely composed of insulation. The majority also points to the lack of any cross-hatching on the sides of the ice chamber in figure 4, as indicative that Kappos does not teach an ice chamber with a metal bottom. As noted above, diagonal cross-hatching as indicative of metal composition is not required by the MPEP and is not even the proper indicator for metal in elevation views. Moreover, this lack of cross-hatching is irrelevant because a single embodiment of more broadly claimed subject matter (in the present case, figure 3 of the Kappos patent) constitutes a description of the invention for anticipation purposes. Vascath Inc. v. Mahurkar, 935 F.2d 1555, 1562, 19 USPQ2d 1111, 1115 (Fed.Cir.1991) (citing In re Lukach, 442 F.2d 967, 970, 169 USPQ 795, 797 (CCPA 1971))