**Raymond G. TRONZO, Plaintiff,**

v.

**BIOMET, INC., Defendant.**

**No. 91–8175–Civ.**

United States District Court,
S.D. Florida.

Nov. 2, 1996.

---

Robert S. Hackleman, Connis O. Brown, III, Fort Lauderdale, FL, for Plaintiff.

L. Martin Reeder, Jr., Steel Hector & Davis, West Palm Beach, FL, for Defendant.

## ORDER DENYING BIOMET'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND DIRECTING ENTRY OF FINAL JUDGMENT FOR DR. TRONZO ON THE PATENT CLAIM AND THE COUNTERCLAIM FOR INEQUITABLE CONDUCT

HURLEY, District Judge.

This matter comes before the Court upon Biomet's [202–1] motion for judgment as a matter of law on the same grounds raised in Biomet's [77–1] pending motion for summary judgment. The summary judgment motion was not previously addressed by the court because the court exercised its discretion to submit the case to the jury. Accordingly, at the conclusion of all of the evidence, Biomet renewed the substance of its summary judgment motion as a motion judgment for a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The court reserved ruling and now, after the jury has rendered its verdict, the court takes up the Rule 50 motion. Upon review of the record and the applicable law, and for the reasons given below, the motion is denied.

## I. FACTS

### A. The Background of the Litigation

This litigation concerns the alleged infringement of a patent for the "cup" of an artificial hip prosthesis and related allegations in tort. The matter was tried before a jury which rendered a judgment against the defendant, Biomet, Inc., on all claims. Although the detailed history of this case is presented in this court's Order Denying Biomet's Counterclaim for Inequitable Conduct, rendered 19 June 1996, a brief recitation is helpful to the resolution of the present motion.

The plaintiff, Dr. Tronzo, owns the patent in suit, U.S. Patent No. 4,743,262 ("the '262 patent"), and various earlier patents. The '262 patent claims a genus of finned cups for implantation as a prosthetic in the acetabulum—or the socket portion—of a human hip joint. It also claims specific embodiments of the genus, such as hemispherical and conical shapes. The '262 patent, which was applied for by Dr. Tronzo on 24 March 1987 and issued by the U.S. Patent and Trademark Office ("PTO") on 10 May 1988, is a continuation-in-part of a prior patent, the application for which was co-pending when Dr. Tronzo applied for the '262 patent. This "parent application," as the co-pending application is called, also claimed a the cup portion of a hip implant device, albeit only a cup with the shape of a trapezoid or truncated cone. (Mot.Summ.J.App., at A26; hereinafter cited by page only). The parent application was filed on 1 June 1984, and it matured into U.S. Patent No. 4,681,589 ("the '589 patent") when issued on 21 July 1987.

The accused hip implant device, which Biomet manufactures, is a finned, hemispherically shaped cup. It is known eponymously named the "Mallory–Head cup," after the doctors who invented it. The assertion is that this cup reads on the '262 patent both literally and under the doctrine of equivalents.

### B. The Claimed Invention

The precise claims of the '262 which are at issue in Biomet's motion are Claims 1, 2, 3, 5, 6, 9, 10, and 11. Claim 1 of the 262 patent reads:

An acetabular cup prothesis [sic] comprising a body extending generally longitudinally and terminating into front and rear surfaces, said front surface extending substantially transversely to said body; and at least one fin for securing said cup to a prepared acetabulum

cavity, said fin having a length extending generally longitudinally from said front surface toward said rear surface continuously along said body throughout the entire length of said fin, and said fin being configured so as to extend radially outwardly beyond the perimeter of said front surface and said body so as to engage with the cavity thereby securing said cup.

Claim 2 reads:

An implant of claim 1, wherein the body has a generally conical outer surface.

Claim 3 reads:

An implant of claim 1, wherein the body has a generally hemispherical outer surface.

Claim 5 reads:

An implant of claim 1, wherein the implant has a porous outer surface.

Claim 6 reads:

An implant of claim 1, wherein the fins are integral with the body.

Claim 9 reads:

An acetabular cup prosthesis consisting essentially of (1) a body extending generally longitudinally and terminating into front and rear surfaces extending substantially transversely to said body; and (2) at least one fin for securing said cup to a prepared acetabulum cavity, said fin having a length extending generally longitudinally from said front surface toward said rear surface continuously along said body throughout the entire length of said fin, and said fin being configured so as to extend radially outwardly beyond the perimeter of said front surface and said body so as to engage with the cavity thereby securing said cup.

Claim 10 reads:

A prosthesis of claim 9, wherein the body has a generally conical outer surface.

Claim 11 reads:

A prosthesis of claim 9, wherein the body has a generally hemispherical outer surface.

## C. The Prosecution History

The evaluation of these claims and the substance of the motion before the court today have not arisen in a vacuum. Tracing the course of the '262 patent from filing to issuance is an extensive prosecution history which bears on the decision that the court is called to make today. Most significant for today's motion are two attempts, one each by Biomet and Dr. Tronzo, to have the '262 patent reexamined after issuance. Dr. Tronzo filed for the first reexamination on 4 December 1991. (A286–88). At the time, the '262 had only eight claims. Dr. Tronzo sought reexamination of these claims to confirm their validity in light of three intervening patents applications that Dr. Tronzo had filed with foreign patent offices and which those offices had published. One of the references was Dr. Tronzo's British patent application which is again before the court today.

As the basis for upholding his claims on reexamination, Dr. Tronzo argued that his '589 patent incorporated finned hemispherical cups—and the entire genus of finned cups—by reference to earlier patents he had obtained; thus, his '262 claims were supported by the '589 sufficiently to antedate the intervening references. (A290, ¶ 4; A295). Without embracing or rejecting Dr. Tronzo's "incorporation by reference theory," the examiner determined that the subject matter of the '262 was supported by the specification of the '589. (A483). In reaching this conclusion, the examiner focused particularly on the published British patent application and observed that its only relevant disclosure was also found in the '262 CIP and '589 parent applications in the United States. *Id.* Thus, without a substantial new question of patentability, the examiner denied the reexamination request and left the claims of the '262 intact. *Id.*

The second reexamination was requested by Biomet in March of 1992. (A498). The request was based, *inter alia*, upon two alleged references of intervening prior art. One was a brochure from Biomet promoting the Mallory/Head cup. The second reference was Dr. Tronzo's British Patent application, the very same reference for which Dr. Tron-

zo also sought reexamination. (A696). It is undisputed that both references arose between the filing of the '589 application and the '262 application and that they were in existence, if not published, more than one year prior to the filing of the '262 application. Thus, the questions on reexamination were simply (1) whether the '262 claims were entitled the same as the filing date of the '589 claims so as to antedate the references and (2) if not, whether the references were "published" in a legal sense, thereby disclosing the hemispherical shape and anticipating the '262 claims.

In light of these references, among others, the patent examiner granted the second reexamination for claims 1 through 6 of the '262 patent. (A695, as amended by A705). The initial conclusion of the examiner during the second reexamination was to reject claims 1–3 and 6 for anticipation under 35 U.S.C. § 102(b). (A707–08). Claim 3, in particular—the dependent claim which included a hemispherical cup—was rejected specifically because of the Biomet brochure. (A710). Implicit in this rejection was the conclusion that the claims could not receive the benefit of the earlier filing date of the '589 so as to antedate the intervening references. The examiner made no explicit finding during the second reexamination as to whether Dr. Tronzo's British application also anticipated claim 3.

Dr. Tronzo responded to this initial office action by arguing that the hemispherical shape was described by the parent application so that the '262 claims antedated the intervening Biomet brochure. (A744). Dr. Tronzo also added claims 9 through 11 to the '262 application. As a result of his filings, the patent examiner entered a final office action which rejected both claims 3 and 11 because of anticipation by the Biomet brochure under 35 U.S.C. § 102(b). (A836–39). The examiner based this rejection on Dr. Tronzo's own admission that the '589 application did not specifically disclose the hemispherical shape. (A837). The examiner also concluded that the hemispherical shape would not be obvious from the '589 description because: "the main thrust of the conical or trapezoid configuration of the cup [was] to accommodate small amount of shrinkage, 'physiological atrophy.' The particular benefit of the conical shape is that the cup will react dynamically by press positioning itself further into the bone. This benefit cannot be realized by a hemispherical cup." (A838).

Dr. Tronzo again responded to the PTO, this time supporting his prior argument that the '262 claims should receive the benefit of the earlier filing date of the '589 application with a new legal theory for proving that the '589 disclosed the same subject matter as the '262 claimed. That theory was founded on *In re Spiller*, 500 F.2d 1170 (C.C.P.A. 1974) and was loosely termed "obviousness." Although the examiner initially rejected the legal theory, the examiner later reconsidered, and it was on this theory that Dr. Tronzo ultimately prevailed, in spite of the earlier rejections by the examiner. *Cf.* (A882–83). Accordingly, on 13 December 1993, the examiner filed his notice of intent to issue reexamination certificate confirming claims 1 through 11. (A1033). From this confirmation, the present litigation ensued.

### D. The Arguments of the Parties

As grounds for its motion, Biomet's suggests that two of the same prior art references that were before the PTO—the Biomet brochure and the British patent application—anticipate and thereby invalidate the patent under 35 U.S.C. § 102(b). According to Biomet, the claims of the '262 application are not adequately described in the '589 application to entitle the claims to the earlier filing date of the '589 application. Thus both references anticipate the filing of the '262 claims by more than one year and run afoul of § 102(b). It is on this basis that Biomet seeks a judgment invalidating claims 1, 3, 5, 6, 9, and 11. Furthermore, Biomet seeks a judgment of non-infringement as to claims 2 and 10. None of the remaining claims—claims 4, 7, or 8—are at issue in this lawsuit. Since only claims 1, 2, 9, and 10 were sent to the jury, only they remain at issue for purposes of Biomet's motion.

In response to these arguments, Dr. Tronzo counters that the claims '262 application, as a continuation-in-part of the '589 application, receives the benefit of the earlier filing date of the '589. He cites 35 U.S.C. § 120 as

the statutory authority for this relation back theory and argues that the specification of the '589 application adequately disclosed the hemispherical shape so as to comply with § 120 and thereby entitle the '262 claims to the earlier date. In particular, he relies on a reference in the "Field of the Invention" section of his '589 patent to his earlier patents which spoke to the hemispherical shape—namely, U.S. Patent Nos. 3,840,904 and 3,808,606. (A23). Based upon this interpretation of the specification of the '589 patent, Dr. Tronzo concludes that the effective filing date of the '262 claims antedates the two references in question, and thereby avoids any anticipation problem under 35 U.S.C. § 102(b). For good measure, Dr. Tronzo also disputes that the two references are published disclosures of his '262 claims.

In rebuttal, Biomet would have the court conclude that Dr. Tronzo's conduct and admissions during the prosecution of the '262 patent estop him from employing his incorporation by reference argument. Biomet argues that Dr. Tronzo dropped his incorporation by reference while prosecuting the patent—as well as all other contentions that the hemispherical shape of the '262 was specifically disclosed in the '589 patent. Biomet suggests that Dr. Tronzo prevailed before the PTO, in spite of the intervening references, only because the patent examiner relied upon the legal theory from *In re Spiller*, 500 F.2d 1170 (C.C.P.A.1974) that the hemispherical form was obvious, despite the lack of a "specific disclosure" of that shape in the '589 application. It is Biomet's contention that the patent examiner's reliance on this legal theory constitutes error in the prosecution of the patent which this court must correct by denying the '262 claims the benefit of the earlier filing date of the '589.

In light of the uncontroverted dates of the two references, all of these arguments reduce to one essential question: was the disclosure of the invention in the '589 application legally sufficient to entitle the claims of the '262 patent to the earlier filing date of the '589 patent? If so, then the '262 claims antedate the references and avoid the anticipatory bar of § 102(b). This outcome is what the jury found. On the other hand, if the jury verdict

is in error, then the court must reach the secondary issues of whether the one or both of the references sufficiently and publish the hemispherical shape so as to anticipate, and thereby invalidate, the claims of the '262.

## II. DISCUSSION

### A. Standard of Review Under Rule 50(a)

Rule 50(a) provides:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find for that party on that issue, the court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party....

Fed.R.Civ.P. 50(a). When the court, as here, does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have "submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed.R.Civ.P. 50(b). Under Rule 50, a motion is appropriate when either: (1) a party raises a pure legal issue for determination based upon undisputed facts or (2) a party is unable to produce *substantial* evidence to support a jury verdict in its favor on an issue. *See* Comment 1991 amend., Fed.R.Civ.P. 50. When addressing the second type of motion, a court need not require that there be "a complete absence of facts to support a jury verdict" for the non-moving party before granting a judgment as a matter of law. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989). To the contrary, "there must be a substantial conflict in evidence to support a jury question." *Id.* The standard is "[i]f the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion [is] properly granted." *Id.*

### B. The Presumption of Administrative Correctness and Burden of Persuasion

Not only is a Rule 50 motion usually a delicate matter because of the risk of infringing on the purview of a jury, it is even more

delicate in this instance because of the presumption of correctness that attaches to the findings of an administrative body. By statute, a patent is presumed valid. 35 U.S.C. § 282. The rationale for the presumption lies in the expertise of the PTO in making the technical factual determinations underlying the patent process. *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574–75 (Fed.Cir.1992). A party challenging the validity of a patent has the burden of persuasion and must show clear and convincing evidence to prevail. *Buildex Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed.Cir.1988); *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931 (Fed.Cir.1990) (§ 112 case). This burden is "most formidable" when the party asserting invalidity relies only upon prior art considered by the PTO. *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed.Cir.1983). Nevertheless, "[t]he PTO's decision to issue a patent is entitled to deference only to the extent that it is based on relevant facts and on correct principles of law." *Plastic Container Corp. v. Continental Plastics of Okla., Inc.*, 708 F.2d 1554, 1558 (10th Cir.1983). It is with these deferential principles in mind that the court reviews Biomet's motion.

### C. The Relation Back of the Filing Date of the Claims of the '262

The starting point for determining when a claim in a continuation-in-part application receives the effective filing date of the parent application is section 120 of title 35, United States Code. Section 120 allows the benefit of the earlier filing date when the subject matter of the claim is previously "disclosed in the manner provided by the first paragraph of section 112 of this title...." 35 U.S.C. § 120. Section 112, in turn, provides:

> The specification shall contain a **written description** of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to **make and use** the same, and shall set forth the best mode contemplated

by the inventor of carrying out his invention....

35 U.S.C. § 112 ¶ 1 (emphasis added).

This paragraph of § 112 is commonly read to have two components: the "written description" requirement and the "enablement" requirement, also known as the "make and use" provision. *See Vas–Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed.Cir.1991) (reversing trial court's use of filing date of parent application under § 120 for lack of a clear description of the claims in the specification of the parent application). The very point of the Federal Circuit in making this distinction is to alert trial courts to the importance of reading the written description requirement strictly. In making this point, the Federal Circuit pointed out that "it is possible for a specification to *enable* the practice of an invention as broadly as it is claimed, and still not *describe* that invention." *Id.* (quoting *In re DiLeone*, 436 F.2d 1404, 1405 (C.C.P.A.1971)) (emphasis in original).

To meet the written description requirement of § 120, the specification of the parent application must have "claim-supporting language" which provides a description of the invention claimed, not merely "claim-anticipating language." *Id.* at 1562 (citing *In re Lukach*, 442 F.2d 967 (C.C.P.A.1971)). In short, the claim-supporting language "must clearly allow persons of ordinary skill in the art to recognize that [the applicant] invented what is claimed." *Id.* at 1563 (quoting *In re Gosteli*, 872 F.2d 1008, 1012 (Fed.Cir.1989)). The proper test is "whether the disclosure in the [parent] application reasonably conveys to the artisan that the inventor had possession at the time of the later claimed subject matter." *Id.* at 1563 (giving the test from *In re Kaslow*, 707 F.2d 1366, 1375 (Fed.Cir. 1983)).

This test can be satisfied either by an "express" or an "inherent" disclosure of the invention claimed. *In re Lukach*, 442 F.2d 967, 969 (C.C.P.A.1971) (analyzing both methods). Even an "inherent" disclosure, though, must make the inventor's possession of the claimed invention obvious. Thus, the written description requirement of section 112 cannot be satisfied by disclosing only one embodiment or species of an invention while

claiming the whole genus or a claiming different embodiment or species. Unlike the enablement provision of section 112, where disclosure of a single species might be sufficient to enable a practitioner skilled in the art to make and use any other member of the genus, see *Milliken Research Corp. v. Dan River, Inc.*, 641 F.Supp. 4 (W.D.Va.1982), *aff'd*, 739 F.2d 587 (Fed.Cir.1984) (enablement case), the written description requirement of § 112 is requires more. *See Vas-Cath, supra.* This strict reading of the written description requirement prevents an inventor from surreptitiously expanding of a patent through successive continuation-in-parts. *See id.* at 1562. Essentially, it limits the claims of an applicant to those inventions he clearly discloses, either expressly or inherently.

■ In light of this law, Biomet's first contention is that Dr. Tronzo's '589 patent does not meet the written description requirement of § 112, upon which § 120 depends, so as to entitle the '262 claims for a hemispherically shaped cup to the benefit of the filing date of the '589. A close review of the specification of the '589 patent application suggests that Biomet is correct. Nowhere in the application does the word "hemisphere" or "hemispherical" appear. At best, Dr. Tronzo refers only indirectly to hemispherical shapes. In one place, he discusses the "Field of the Invention" and incorporates two earlier patents on hemispherical cups "for purposes of delineating an art area." (A23). By its own terms, the purpose of this incorporation is narrow and serves only to review the prior art, not to describe the current invention.

The second indirect reference is found twice in the "Background of the Invention" section of the '589 application. The language appears to be boilerplate to the effect that "obviously the invention is not limited to the specific structures and variations disclosed buy will permit obvious variations within the scope of the invention as defined by the claims herein." (A23). He refers again to "minor variations" which are "obvious" at the end of his specification. (A26).

Even with such vague references to "minor variations" that are "obvious," however, Dr.

Tronzo seems to make clear that the configuration of his cup is not a minor feature. In fact, he emphasizes repeatedly that the very point of his invention is the conical or trapezoidal configuration itself. In the Summary of the Invention he says:

> Hence, the physical configuration and design of the cup works constantly with bony growth around the cup to provide any necessary compensating movement, while at the same time providing the optimum initial placement and positioning fixation required for a continuing optimal intercoation of the parts and proper structural support in a firm and rigid manner.

('589 Patent, col. 4, lines 29–35).

Dr. Tronzo stresses at every opportunity that the trapezoidal or conical shape of his invention is the configuration which makes these functions possible. For example, in summarizing the invention, he attributes the above benefits to the uniqueness of the trapezoidal or conical shape: "the positionment is guaranteed by use of the fins and the overall configuration of the implant as a trapezoid or truncated cone." (A24). He reiterates that "[a]nother and extremely important aspect of the present device resides in the configuration of the acetabular cup as a trapezoid or a portion of a truncated cone." ('589 patent, col. 3, lines 61–63). Furthermore, "[t]he cone acts to provide a constant wedging of implant into bone." (*Id.*, col. 4, lines 51–52.). In describing the preferred embodiment, he again states "[o]ne outstanding feature of the present invention resides in the configuration of the cup implant. By reference to FIG. 3, it will be seen that the external shape of this member constitutes a portion of a truncated cone. The cup includes a front face and a rear face." (*Id.*, col. 5, line 66–68 & col. 6, lines 1–3). In all, the clear message is that the conical or trapezoidal shape is the basis for the functional advantages offer by his invention.

On this record, the question of an adequate written description in this case parallels *In re Lukach*, 442 F.2d 967 (C.C.P.A. 1971). In *Lukach*, the court confronted a continuation-in-part to a grandparent application for copolymers. The grandparent claimed a "subgenus" of copolymers—de-

fined by their specific molecular weight and described as covering a "narrow" range of weights. *Id.* at 969. Based on this description, the patentee sought the benefit of § 120 to obtain the filing date of the grandparent for claims in the CIP which covered other molecular weights. *Id.* The PTO, however, rejected this use of § 120 because the patentee had not satisfied the written description requirement of § 112, as § 120 requires. *Id.*

In affirming the PTO's rejection of the claims for failure to comply with the written description requirement of § 112, the *Lukach* court ruled "where an applicant claims, as here, a class of compositions, he must describe that class in order to meet the description requirement of the statute." *Id.* (citations omitted). The court explained that the mechanics of § 112 are quite different from the doctrine of anticipation where "the description of a single embodiment of broadly claimed subject matter constitutes a description of the invention for anticipation purposes ... whereas the same information in a specification might not alone be enough to provide a description of that invention for purposes of adequate disclosure." *Id.* at 970 (distinguishing *In re Ruscetta,* 255 F.2d 687 (C.C.P.A.1958) as an anticipation case). At the same time, the court acknowledged that the written description does not have to describe the invention claimed *"ipsis verbis."* *Id.* at 969. Rather, it is the evidence in the record on whether the wording employed had a precise meaning in the art that determines the adequacy of the description. *Id.* Finding that the grandparent application spoke merely to copolymers whose molecular weight was distributed over a "narrow" range—one of which was given as a working example—and lacking testimony which showed that skilled artisans would interpret this language in any other way, the *Lukach* court found that this description did not expressly or inherently disclose the entire genus into which the CIP claims fell, nor even

the particular subgenus claimed in the CIP. *Id.* Thus, the claims of the CIP did not get the benefit of the earlier filing date were properly rejected by the PTO because of intervening prior art references. *Id.*

Although a chemical case, *Lukach* establishes principles of law with wide applicability. Employing the same principle in the context of a method claim, the Court of Customs and Patent Appeals—the predecessor to the Federal Circuit—explained: "[t]hat a person skilled in the art might realize from reading the disclosure that such a step is possible is not sufficient indication to that person that step is part of [the patentee's] invention." *In re Barker,* 559 F.2d 588, 593 (C.C.P.A.1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1238, 55 L.Ed.2d 764 (1978) (upholding rejection of claims for lack of adequate description in the same application). The United States Court of Customs and Patent Appeals illustrated the proper application of these principles in yet another case where a grandparent application which taught, described, and claimed only aqueous and water-miscible solvents was held inadequate to support a CIP which claimed water-immiscible solvents, despite the occasional use of the broad phrase "liquid medium" as a general description of the invention in the grandparent application. *In re Koller,* 613 F.2d 819, 822 (C.C.P.A.1980). Thus, the principles of *Lukach* have wide support in the precedent and properly govern this case.

Just like the circumstance presented in *Lukach,* the '262 CIP in the present case attempts to add claims to an additional subgenus (also referred to here as a "species"[1])—the hemispherical shape—which was not expressly disclosed in the parent application. The present case goes further in that the '262 attempts to claim the whole genus, of which the conical or trapezoidal shape and the hemispherical shape are included as different subgeni or species. The

---

**1.** The adoption of biological classifications by the law of patents implies a precision in classification schemes that is perhaps better left to the natural sciences. A "subgenus" is defined as "[a]n occasionally used taxonomic category ranking between a genus and a species." The American Heritage Dictionary of the English Language (1981). Just when the groupings of

inventions within one genus warrant designation as a subgenus rather than as a species appears to have no principled distinction under patent law. The conclusion of the court is that they are in fact synonymous and indicate merely a division that is immediately subordinate to a particular genus.

case presents an even starker question than *Lukach*, however, because the written description in the parent '589 does not attempt to identify other, equally functional shapes or talk in terms of a range of shapes as did the grandparent application in *Lukach*. As noted above, the '589 employs only boilerplate language that sweeps all "obvious equivalents" within its ambit. In essence, Dr. Tronzo's boilerplate language does nothing more than state the law on interpreting § 112 without in anyway suggesting that the conical or trapezoidal cup shape so heavily emphasized throughout the '589 application should also be recognized by practitioners as describing a hemispherical cup which would also have been in Dr. Tronzo's possession at the time. Therefore, as in *Lukach*, supra, and as also exemplified by *In re Koller*, supra, the narrow language of the '589 application cannot be said to disclose expressly either the particular hemispherical shape of the '262 claims or the entire genus of cups within which the conical cup of the '589 claims and the hemispherical cup of the '262 claims belong.

Unlike *Lukach*, however, this case contains evidence, both in the prosecution history and in the testimony at trial, that a practitioner skilled in the art might have understood a finned hemispherical cup to be the anatomical equivalent of the finned, trapezoidal or conical cup which Dr. Tronzo expressly disclosed in the '589. Thus, there is a potential for an "inherent" disclosure in this case which was absent from *In re Lukach*. Given the lack of an express disclosure, the court concludes as a matter of law that it is exclusively on a theory of inherency that Dr. Tronzo can satisfy § 112, if at all.

### D. The Effect of the Prosecution History on the Written Description of the '589 Specification

This conclusion is reinforced by the conduct of Dr. Tronzo before the PTO. As the prosecution history reveals, Dr. Tronzo conceded to the PTO that "my prior ['589] patent does not specifically disclose a shape other than the hemispherical shape of the cup. This is the conical shape, form which a hemispherical shape is obvious." (A744). While Dr. Tronzo's intention in making this sworn statement is ambiguous, how the pat-

ent examiner took the statement is not. In the final office action in reexamination, the patent examiner rejected claims 3 and 11 of the '262 patent—specifically addressing the hemispherical shape—because "Patent ['589] owner admits that the patent does not disclose the specific embodiment of the cup." (A837). Dr. Tronzo subsequently overcame this acknowledged legal defect only by resorting to a theory that the hemispherical shape was "obvious," even if not expressly disclosed.

It is axiomatic that an applicant is held to his admissions and conduct before the PTO in the later construction of a claim, especially for literal infringement. *See Advance Transformer Co. v. Levinson*, 837 F.2d 1081 (Fed. Cir.1988). The equitable principle at stake is that an applicant "cannot acquiesce to a rejection and to an agreed alternative, and now years later shift his stance 180 degrees to argue for a second bite at the abandoned apple." *Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1208 (Fed.Cir.1992), *cert. denied sub nom., Lemelson v. Mattel, Inc.*, 506 U.S. 1053, 113 S.Ct. 976, 122 L.Ed.2d 131 (1993) (estopping argument that necessarily undermined limiting clauses added to claim during prosecution to overcome initial rejection). This principle also extends beyond construction of a claim for purposes of literal infringement to delimiting the range of equivalents. *See E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1438 (Fed.Cir.1988), *cert. denied*, 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988) (distinguishing the uses of prosecution history).

That Dr. Tronzo forsook any argument that the '589 patent expressly describes the hemispherical shape is clearly established by the prosecution history. Never, after receiving the patent examiner's characterization of his admission, did Dr. Tronzo ever protest or otherwise challenge the patent examiner's understanding of his statement, despite Dr. Tronzo's filing at least two more responses to the subsequent office actions of July 12 and October 1, 1993. (A843–47; A890–903). Furthermore, Dr. Tronzo made his admission after having raised the incorporation by reference idea during the first reexamination

request. (A323). Thus, by the time of the second reexamination, Dr. Tronzo had abandoned the incorporation argument and instead acquiesced in the idea that his '589 patent lacked a specific disclosure. So definitive was his acquiescence that he pursued an alternate theory which necessarily assumed the lack of an express description of the hemispherical shape: a theory of obviousness under *In re Spiller*, 500 F.2d 1170 (C.C.P.A. 1974). Accordingly, as a matter of law, Dr. Tronzo is estopped now from arguing an that the '589 in any way contains an express disclosure of the claims of the '262. Whether *In re Spiller*, though, is the proper case for determining an "inherent" disclosure of the '262 claims, as § 112 also allows, is a separate question.

### E. The Applicability of *In re Spiller* to the Written Description Requirement

■ *In re Spiller* involved a single patent application without any continuation-in-parts. *In re Spiller*, 500 F.2d at 1171. The case presented the question of whether evidence of a patentee's reduction of his invention to practice antedated a reference so as to avoid invalidity under 35 U.S.C. § 102. *Id.* at 1172. The legal theory which governed the case was regulation 131, which provided, both then and now:

(a)(1) When any claim of an application or a patent under reexamination is rejected ... on reference to a foreign patent or to a printed publication, the inventor of the subject matter of the rejected claim ... may submit an appropriate oath or declaration to overcome the patent or publication.... When an appropriate oath or declaration is made, the patent or publication cited shall not bar the grant of a patent to the inventor or the confirmation of the patentability of the claims of the patent, unless the date of such patent or printed publication is more than one year prior to the date on which the inventor's or patent owner's application was filed in this country.

37 C.F.R. § 1.131; *See* 50 F.R. 9368 (Mar. 7, 1985) (Notice of final rulemaking). The particular application of this rule that troubled the Court of Claims and Patent Appeals was

whether the reduction of an invention to practice was sufficient to claim an invention which was not the same but which was shown to be "obvious" in light of the knowledge of one skilled in the art. *Id.* at 1176–77.

In concluding that an "obviousness" analysis was proper under Rule 131, the court ruled that "[c]ertainly appellants should not be required to submit facts under Rule 131 showing that they reduced to practice that which is obvious ... for the purpose of antedating a reference." *Id.* at 1177. The court looked to evidence of what a skilled artisan would have known at the time, and ultimately, the court concluded that the inventor had reduced to practice a variant of the claimed invention that was sufficiently obvious under Rule 131 to antedate any prior art. Thus, the court held the patent valid. *Id.* (reversing on other grounds).

In the present case, the patent examiner apparently extrapolated from the analysis in *In re Spiller* for obviousness under Rule 131 to the analysis for "inherency" under § 112. (A1034). This extrapolation, however, is weak. For one, *In re Spiller* is limited to its facts: the use of Rule 131 to overcome references which antedate the filing of a single application. For another, *In re Ruscetta* holds specifically that a Rule 131 analysis and an anticipation analysis are "not.... comparable." *In re Ruscetta*, 255 F.2d 687, 690 (C.C.P.A.1958). *In re Spiller* simply does not consider the very strict written description requirement of § 112; therefore, it cannot be used to antedate intervening prior art references under § 120.

### F. The Sufficiency of the Jury Verdict

■ While the patent examiner's reliance on an erroneous principle of law may have undone, at least to some extent, the presumption of administrative correctness which ordinarily attaches to the findings of the PTO, the court need not reach this consideration. While the identity of the conclusions of the patent examiner and the jury suggest that an "obviousness" analysis under Rule 131 is not much different in substance from an analysis for "inherency" under § 112, the weakness in the decision of the patent examiner matters not. What does matter for purposes of Biomet's Rule 50 motion is the

jury's ability to decide whether the written description of the '589 patent application adequately disclosed the subject matter claimed by the '262 patent application so as to entitle the claims of the '262 to the earlier effective filing date of the '589 application. In this regard, the jury was instructed to consider what a practitioner with ordinary skill in the art would reasonably understood the '589 specification to convey about the invention(s) that Dr. Tronzo had in his possession when filing of the '589 application. Jury Instructions, at 24. This standard is the correct one, see *Vas–Cath*, 935 F.2d at 1563, and it avoids the seeming error that the patent examiner committed in applying *In re Spiller*.

Through a special verdict, the jury concluded that Biomet had not carried its burden of proof in establishing that the specification of the '589 patent did *not* disclose the hemispherical shape claimed in the '262. Special Verdict, § II.A.1. This conclusion necessarily gave the claims of the '262 application the effective filing date of the '589 application, thereby antedating the Biomet brochure and the British patent application, both of which were before the jury. *Id.* The law and the evidence in this case are sufficient to support this verdict, especially on a theory of inherent disclosure. It is the duty of this court to uphold the jury verdict where the law and the facts so permit. Accordingly, Biomet's motion must fail.

### III. DECRETAL PROVISIONS

For the foregoing reasons, it is hereby

**ORDERED** and **ADJUDGED** as follows:

1. Biomet's [202–1] motion for judgment as a matter of law is **DENIED**.

2. The Clerk of the Court is **DIRECTED** to enter final judgment in favor of the plaintiff,

Dr. Tronzo, on his claim for patent infringement as follows:

a. compensatory damages in the amount of $3,805,000;

b. an enhancement of $1,902,500, as directed by the court in its Order on Willful Infringement, rendered 19 June 1996;

c. prejudgment interest on the compensatory damages in the amount of $628,-584, as directed by the court in its Order Determining Dates of Injury and Applicable Interest Rates, rendered 17 July 1996, as calculated by Biomet, Inc. in response to said order, and as clarified by the court's contemporaneous Order Granting Biomet's Motion for Reconsideration;

d. a permanent injunction, commencing the day after entry of final judgment, which enjoins defendant Biomet, including its agents, officers, directors, and employees, from infringing claims 1, 2, 9, and 10 of United States Patent No. 4,743,262, either literally or under the doctrine of equivalents, as directed by this court's contemporaneous Order Granting Motion for Injunction. This injunction includes the making, using, promoting, distributing, demonstrating, marketing, offering for sale, and selling of any infringing device. It does not include the servicing or repair of infringing devices sold for patient use prior to the date of verdict, 25 January 1996.

3. The Clerk of the Court is also **DIRECTED** to enter final judgment in favor of the plaintiff, Dr. Tronzo, on the counterclaim for inequitable conduct.

4. The court reserves jurisdiction over any motions made pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure and 35 U.S.C. § 285.

5. Any motion to correct the court's calculation of prejudgment interest to reflect the actual date of entry of final judgment should be timely filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.