58 CCPA

**Application of Roland Ralph DiLEONE and Howard Robert Lucas.**

**Patent Appeal No. 8402.**

United States Court of Customs and Patent Appeals.

Feb. 11, 1971.

James T. Dunn, Stamford, Conn., attorney of record, for appellant; Harry H. Kline, Stamford, Conn., of counsel.

S. Wm. Cochran, Washington, D.C., for the Commissioner of Patents; R. E. Martin, Washington, D.C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and NEWMAN, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, which affirmed the rejection of claims 1–9, 13 and 17 in appellants' application serial No. 392,635, filed August 27, 1964, for "Polymeric Material and Process of Preparing the Same."

The invention is a new and unobvious class of polyimides useful in making molded articles and also useful as coating or self-supporting films. Claim 1 is illustrative for framing the issues before us:

1. A polyimide of (1) a diamine, (2) 3,4-dicarboxy-1,2,3,4-tetrahydro-1-naphthalenesuccinic dianhydride and (3) a different dianhydride of an organic tetracarboxylic acid, wherein the mol percent ratio of (2):(3) is between about 35:65 and 65:35, respectively.

The rejection is solely for insufficient disclosure, the examiner having stated that the recitations " 'a diamine' and 'a

different dianhydride of an organic te- tracarboxylic acid' are considered to be too broad to be supported by the disclo- sure." The board agreed.

It has not been contended by the Pat- ent Office that the disclosure fails to en- able a person skilled in the art to make and use the entire class of polyimides claimed. The sole issue is whether the specification satisfies the *description* re- quirement of the first paragraph of 35 U.S.C. § 112, with respect to claims of the breadth sought here.

In recent cases we have recognized that the statutory requirement that the specification "describe the invention" might not be met even where the specifi- cation satisfies the related statutory re- quirement that it "enable any person skilled in the art * * * to make and use the same." In In re Robins, 429 F. 2d 452, 57 CCPA 1321 (1970), in consid- ering a possible rejection under the first paragraph of § 112, we stated that such a rejection

> must be reversed inasmuch as the specification contains a statement of appellant's invention which is as broad as appellant's broadest claims, *and* inasmuch as the sufficiency of the specification to satisfy the "best mode" requirement of § 112 and to en- able one skilled in the art to practice appellant's process as broadly as it is claimed has not been questioned.

429 F.2d at 456 (emphasis added). In In re Ahlbrecht, 435 F.2d 908 decided January 7, 1971, we held that the descrip- tion requirement had not been satisfied as to a claimed class of esters, even though the specification might have in- directly enabled one skilled in the art to make and use the entire class. It is clear from *Robins* and *Ahlbrecht* that it is possible for a specification to enable the practice of an invention as broadly as it is claimed, and still not describe that invention.[1] The first paragraph

of § 112 requires both description and enablement. What is needed to meet the description requirement will necessarily vary depending on the nature of the in- vention claimed. In *Robins*, as men- tioned above, "a statement of appellant's invention which is as broad as appel- lant's broadest claims" was considered sufficient.

It is the position of the Patent Office that the expression "a diamine" is too broad because the specification describes using only aliphatic and aromatic dia- mines and the expression would include heterocyclic diamines. Appellants agree that the expression includes heterocyclic diamines but contend that the descrip- tion of diamines in the specification is as broad as the recitation in the claims. We agree. The specification states: "One of the objects of the present inven- tion is to produce a polyimide reaction product of (1) a diamine, (2) * * * and (3) * * *." The specification later states: "The first reactant is *a diamine* which *may* be either an aliphat- ic diamine or an aromatic diamine." (Emphasis ours.) The solicitor would have us read "must" for "may." While we recognize that it is a common prac- tice in drafting patent applications to use "may" in a mandatory sense, we note that the originally filed claims, which are part of the disclosure, recited "a diamine" without further limitation as the first reactant. We therefore agree with appellant that "may" should be interpreted in this case as illustrative and not as limiting the description of diamines to aliphatic and aromatic dia- mines. The same considerations apply to refute the solicitor's contention that since the specific aliphatic diamines list- ed in the specification are saturated, the only aliphatic diamines described as reactants are saturated.

We turn now to the recitation of "a different dianhydride of an organic tet- racarboxylic acid." The examiner held,

---

1. For greater clarity on this point, con- sider the case where the specification discusses *only* compound A and contains *no* broadening language of any kind. This might very well enable one skilled in the art to make and use compounds B and C; yet the class consisting of A, B and C has not been described.

and the board agreed, that the specification described only tetracarboxylic acid anhydrides which were either saturated or aromatic carbocyclics, and hence the description did not include heterocyclic dianhydrides of tetracarboxylic acid. We find no basis for such a conclusion. The specification states:

> The third component used in the preparation of the polyimide reaction products of the present invention is a different dianhydride of an organic tetracarboxylic acid. A comparatively limited number of such dianhydrides is available commercially and only a few additional dianhydrides have been disclosed in the literature which are not available commercially insofar as it is known. *Among* the dianhydrides which * * * *may* be used * * * in the preparation of the polyimides of the present invention are [seven listed carbocyclic dianhydrides] and the like. (Emphasis ours.)

We find nothing in this passage which would limit the description of dianhydrides by excluding known heterocyclic dianhydrides. The language used in listing the seven carbocyclic dianhydrides is clearly illustrative and does not limit the broader description contained in the preceding sentences. Moreover, we note that the expression in question appeared in the originally filed claims.

The decision of the board is *reversed.*

Reversed.

BALDWIN, Judge (dissenting).

Now that it as been settled that there is a *description of the invention* requirement compliance with which necessitates inquiry of a slightly different nature than that required by the statutory mandate of describing *the manner and process of making and using the invention,* I must respectfully dissent from the manner in which the majority here has approached this requirement.

In the *Robins* and *Ahlbrecht* opinions referred to by the majority, and now in this case, the court has indicated that the question of enablement is largely an objective determination. Enabling disclosure *may* be present in a specification or in material which is incorporated by reference into the specification regardless of whether such enablement is made apparent from a reading of the description contained in the specification. I would now go one step further and hold that the scope of enablement *must* be made apparent from the description alone. Both the *Robins* and *Ahlbrecht* decisions support this proposition. The majority opinion here, however, appears to suggest that such is not necessary.

The description in a patent specification is, of course, addressed to one having ordinary skill in the pertinent art. Implicit in the *Robins* decision and obvious from *Ahlbrecht* was the conclusion that the description must be such that one of ordinary skill would appreciate the scope of enablement being provided by the disclosure. In the case before us, the decision that the broad claim language is supported by the specification description appears to rest solely on a question of semantics. If the test were so narrow I would still dissent from the result in this case since I find it more reasonable to interpret the recitation on diamines, for example, as quoted by the majority, as being narrowed through the use of "either * * * or" to the two classes specifically mentioned. I would not stop here, however. The inquiry should never be merely semantic in nature. Mere correspondence between the language used in a claim and that employed in the specification has never been held to satisfy the requirements of the first paragraph of 35 U.S.C. § 112. I would hold that it doesn't satisfy any "description" requirement either.

In the case before us, the Patent Office tribunals, and in particular, the examiner—who must be presumed by us to be skilled in the pertinent art in the absence of evidence to the contrary—have disputed the fact that the scope of ap-

pellants' invention would be 'obvious from the language of the description. Keeping in mind the well-known unpredictability of the chemical sciences, I find that the examiner's objections were reasonable. Beyond asserting that they are entitled to the broad claims they are seeking, appellants have not contradicted

this position. Feeling, as I do, that the description requirement should serve to assure that one of ordinary skill in the pertinent art will, in fact, be taught by a specification disclosure,* I conclude that the disclosure before us does not adequately describe the subject matter being claimed.

---

\* I do not mean to imply that the disclosure must *convince* one of ordinary skill as to the fact of enablement. All 'that I would require is that the description be such as to make those skilled in the art *aware* of what is asserted as being enabled. We have held that the scope of protection sought after must be commensurate with the scope of enablement provided by the disclosure. I believe that the disclosure should also contain a description of what is being enabled in such terms as to apprise the reader as to the actual scope of enablement contemplated.